HAMILTON *v.* HAMILTON

[No. 190, September Term, 1965.]

*Decided April 19, 1966.*

*Motion for rehearing filed May 18, 1966, denied May 26, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*Marker J. Lovell,* with whom was *J. Richard Wilkins* on the brief, for the appellant.

*Robert J. Cooke* for the appellee.

BARNES, J., delivered the opinion of the Court.

The question on this appeal is whether the Chancellor abused his discretion in denying the motion of Mary C. Hamilton (the appellant) to set aside a decree of divorce *a vinculo matrimonii*. On January 22, 1965 the Circuit Court for Carroll County awarded C. Harold Hamilton (the appellee) a decree of divorce on the ground of constructive desertion. The appellant was served with summons in the divorce action. She consulted counsel in regard to the divorce but did not retain his services. She answered the bill for divorce by a document drawn up by herself in proper person.

The case was originally set for a hearing on November 11, 1964 but was later postponed to January 22, 1965. The appellant had notice of when the hearing was to be held and she expressly stated in letters to the appellee dated November 16, 1964 and January 18, 1965, copies of which she sent to the Circuit Court, that she would not appear at the hearing to contest the proceedings. She stated in her letter of November 16th: "I will let the giving and getting of a Divorce A Vinculo * * * be up to the conscience of the Court."

· After Mrs. Hamilton failed to appear at the proceedings for divorce and a decree was entered against her, she retained counsel and within a thirty day period—before the decree became enrolled—she filed a motion to set it aside pursuant to Maryland Rule 625. She contends that the decree should be set aside because she was not represented by counsel and was not fully apprised of the nature of the hearing. She did not know that she could be precluded from contesting the divorce which was granted after she did not appear at the proceedings. The appellant alleges, moreover, that she possesses a meritorious defense to her husband's claim of constructive desertion.

In *Ryan v. Johnson,* 220 Md. 70, 150 A. 2d 906 (1959) we quoted with approval from *Clarke Baridon v. Union Co.,* 218 Md. 480, 483, 147 A. 2d 221, 223 (1958) where Judge Hammond, for the Court, said:

"After the judgment properly was entered, the question of whether it should or should not be vacated in

> whole or in part was within the sound discretion of the trial court for the ensuing thirty days. The decisive point no longer was whether there existed a genuine dispute as to a material fact, but rather whether the court was satisfied that there had been shown a reasonable indication of a meritorious defense or other equitable circumstances that would justify striking the judgment—that is, whether the court entertained a reasonable doubt that justice had not been done."

When a motion is made to set aside an unenrolled decree the trial court possesses an extremely broad power of revision and must exercise its discretion liberally "lest technicality triumph over justice." *Eshelman Motors v. Scheftel,* 231 Md. 300, 189 A. 2d 818 (1963). The trial court's discretion is not restricted in regard to setting aside an unenrolled decree as it is where the decree has become enrolled, after which it may then only be revised on grounds of fraud, mistake or irregularity. Maryland Rule 625a. In the case of an enrolled decree even a possible error in the entry of a summary judgment may not constitute such a mistake as would warrant setting it aside. *Rhodes Co. v. Blue Ridge Co.,* 218 Md. 329, 146 A. 2d 771 (1959). See *Tasea Investment Corp. v. Dale,* 222 Md. 474, 160 A. 2d 920 (1960) and *Newark Trust Co. v. Trimble,* 215 Md. 502, 138 A. 2d 919 (1958).

While there is a strong public policy in favor of sustaining the finality of divorce decrees (*Leatherbury v. Leatherbury,* 233 Md. 344, 196 A. 2d 883 (1964)), this policy would not operate in regard to an unenrolled decree before parties could have changed their position and relied on it to their detriment. Cf. *Pryor v. Pryor,* 240 Md. 224, 213 A. 2d 545 (1965) and cases cited therein.

We hold that the Chancellor did not abuse his discretion in refusing to set aside the decree of divorce. No colorable meritorious defense has been interposed by Mrs. Hamilton.

At the original hearing for divorce Mr. Hamilton testified that his wife segregated him from the rest of the family, that he lived in the corner of the attic of his home, and while he was allowed to eat dinner with his wife and children, the children were not allowed to speak to him, nor could they pass,

food to him at the table. His children were not permitted to associate with their father at all.

Mrs. Hamilton ordered her husband out of the house on numerous occasions and had made several "scenes" in the street. On one occasion she tore his clothes from him as they were leaving church. During the course of many altercations between the Hamiltons the wife would physically assault her husband. In the spring of 1962, Mrs. Hamilton rented an apartment for her husband and left a note instructing him to leave the home. Mr. Hamilton ignored the message and continued to live in the attic, usually coming down only to take his meals.

A trial magistrate had committed Mrs. Hamilton to three weeks observation at Springfield State Hospital after her husband had filed a complaint for disorderly conduct against her. On June 22, 1962 Mr. Hamilton left his home and took his minor children with him when he learned that his wife was about to be released from the hospital. He possessed a court order granting him custody of the children. Mr. Hamilton's testimony was corroborated by that of his daughter, Mildred Ann Hamilton.

Approximately two and one half years after their separation Mr. Hamilton filed suit for divorce *a vinculo matrimonii*. The Hamiltons' minor children are presently residing in foster homes. Their oldest daughter lives with Mrs. Hamilton. Mr. Hamilton attempted to resolve his differences with his wife during the first few months of their separation; however, these attempts were not successful.

On the basis of Mr. Hamilton's testimony the Chancellor was clearly justified in finding that the misconduct of his wife rendered a continuation of the marital relationship unbearable, and that Mr. Hamilton could not continue to live with his wife without the loss of his "health, safety and self respect." See *Bryce v. Bryce,* 229 Md. 16, 181 A. 2d 455 (1962); *Scheinin v. Scheinin,* 200 Md. 282, 89 A. 2d 609 (1952); *Reicher v. Reicher,* 196 Md. 494, 77 A. 2d 7 (1950); *Eberwein v. Eberwein,* 193 Md. 95, 65 A. 2d 792 (1949). Under the circumstances Mr. Hamilton was justified in leaving his wife since her actions clearly evidenced the intention that the marriage relation no longer exist. See *Applegarth v. Applegarth,* 239

Md. 92, 99, 210 A. 2d 362, 367 (1965) and cases cited therein. The Chancellor could have found that no reasonable hope or expectation of a reconciliation existed.

In her motion to set aside the divorce decree Mrs. Hamilton does not refute any of the testimony presented by her husband. She claims, as a meritorious defense, that after the birth of their tenth child the Hamiltons mutually agreed not to cohabit. She questions, moreover, the legal sufficiency of the corroboration of her husband's testimony.

The sexual abstinence of the Hamiltons for a period prior to June 22, 1962 did not amount to a voluntary separation since they were not living separately and apart at that time. *Matysek v. Matysek*, 212 Md. 44, 128 A. 2d 627 (1957) ; *Beck v. Beck*, 180 Md. 321, 24 A. 2d 295 (1942). The agreement to forego sexual relations is not apposite to this case since the gravamen of Mr. Hamilton's claim of constructive desertion is based on the generally abusive misconduct of his wife and not on her refusal to have marital relations with him.

In regard to the corroboration of Mr. Hamilton's testimony, we find that it was legally sufficient. Mildred Ann Hamilton's testimony supported that of her father on all the essential elements of his case.

*Order affirmed, with costs.*